Filed 1/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| In re GREGORY GADLIN, | B289852 |
|---|---|
| on Habeas Corpus. | (Los Angeles County Super. Ct. No. BA165439) |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus.  William C. Ryan, Judge.  Petition granted.

Michael Satris, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra, Attorney General, Phillip J. Lindsay, Senior Assistant Attorney General, Julie A. Malone, Supervising Deputy Attorney, Charles Chung, Deputy Attorney General, for Respondent.

# I. INTRODUCTION

In 2016, voters approved Proposition 57, which added a provision to the California Constitution that significantly expanded parole consideration to all state prisoners convicted of a nonviolent felony offense. (Cal. Const., art. 1, § 32, subd. (a)(1) (section 32(a)(1).) Petitioner Gregory Gadlin, a third-strike offender with two prior convictions that render him a sex-offender registrant, contends the regulations of the California Department of Corrections and Rehabilitation (CDCR) invalidly exclude him from Proposition 57 relief. We agree and grant the petition.

# II. PROCEDURAL HISTORY

In 2007, a jury convicted Gadlin of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[1] The jury sustained allegations of two prior serious felony convictions (§ 667, subd. (a)(1)). Those priors were: (1) a 1984 conviction for forcible rape (§ 261, former subd. (2)); and (2) a 1986 conviction for forcible child molestation (§ 288, subd. (b)), each of which is a registrable offense under the Sex Offender Registration Act (§ 290, subd. (c)). Gadlin was sentenced to 25 years to life pursuant to the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12), plus an additional 5-year term for each of his prior serious felony convictions, for a total of 35 years to life in state prison. On appeal, this court

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

affirmed the judgment. (*People v. Gadlin* (May 21, 2009, B203647) [nonpub. opn.].)[2]

On November 22, 2017, Gadlin filed a habeas corpus petition in the superior court, challenging his exclusion from early parole consideration by CDCR. On March 2, 2018, the superior court denied the petition, concluding that under the then-applicable regulations, Gadlin was not entitled to early parole consideration because he had been sentenced as a third-strike offender.

On May 7, 2018, Gadlin filed a habeas corpus petition in this court. We appointed counsel for Gadlin and directed counsel to file an amended petition addressing the validity of CDCR's regulations. Appointed counsel thereafter filed an amended petition challenging CDCR's regulations. We issued an order to show cause why the relief requested in the petition should not be granted. CDCR filed a return to the order to show cause, arguing that the following two factors render Gadlin ineligible for early parole consideration: (1) his status as an inmate serving an indeterminate Three Strikes sentence with the possibility of parole; and (2) his prior convictions for sex offenses that require him to register as a sex offender.

---

[2]    In 1998, Gadlin was previously convicted of identical charges, resulting in the same 35 years to life sentence. This court affirmed the judgment on appeal. (*People v. Gadlin* (2000) 78 Cal.App.4th 587.) In 2006, the United States District Court for the Central District of California granted Gadlin's petition for writ of habeas corpus, and directed the State of California to provide Gadlin with a new trial. (*Gadlin v. Woodford* (C.D.Cal. May 2, 2006, Case No. CV-02-7759-PA (AJW)) 2006 U.S. Dist. LEXIS 101656.)

The CDCR then adopted emergency regulations, effective January 1, 2019, to comply with our holding in *In re Edwards* (2018) 26 Cal.App.5th 1181, 1192-1193 (*Edwards*). (Cal. Code Regs., tit. 15, § 3491, subd. (b)(1), Register 2018, No. 52 (Dec. 26, 2018).) Those modified regulations moot CDCR's argument that Gadlin is ineligible for early parole consideration based on his status as a Three Strikes offender. We thus consider only CDCR's second argument, that Gadlin's two prior convictions for registrable sex offenses render him ineligible for consideration for early release.

## III. DISCUSSION

A. *Proposition 57*

On November 8, 2016, California voters passed Proposition 57, also known as the Public Safety and Rehabilitation Act of 2016, adding section 32, article I, to the California Constitution. "As relevant here, the (uncodified) text of Proposition 57 declares the voters' purposes in approving the measure were to: '1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles.' (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141.)" (*Edwards, supra*, 26 Cal.App.5th at p. 1185.) Under section 32(a)(1), "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." And for purposes of

4

section 32(a)(1), "the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." CDCR was directed to "adopt regulations in furtherance of these provisions, and the Secretary of [CDCR] shall certify that these regulations protect and enhance public safety." (Cal. Const., art.1, § 32, subd. (b).)

CDCR's regulations exclude from early parole consideration an inmate who "is convicted of a sexual offense that currently requires or will require registration as a sex offender under the Sex Offender Registration Act, codified in sections 290 through 290.024 of the Penal Code." (Cal. Code Regs., tit. 15, §3491, subd. (b)(3) (section 3491(b)(3).) In a Final Statement of Reasons accompanying the adopted regulations, CDCR stated, "these sex offenses demonstrate a sufficient degree of violence and represent an unreasonable risk to public safety to require that sex offenders be excluded from nonviolent parole consideration." (Cal. Dept. of Corrections, Credit Earning and Parole Consideration Final Statement of Reasons, Apr. 30, 2018, p. 20.)

B. *Standard of Review*

"'In order for a regulation to be valid, it must be (1) consistent with and not in conflict with the enabling statute and (2) reasonably necessary to effectuate the purpose of the statute. (Gov. Code, § 11342.2.)' (*Physicians & Surgeons Laboratories, Inc. v. Department of Health Services* (1992) 6 Cal.App.4th 968, 982 . . .; see *Henning v. Division of Occupational Saf. & Health* (1990) 219 Cal.App.3d 747, 757 . . . (*Henning*).) Therefore, 'the rulemaking authority of the agency is circumscribed by the

substantive provisions of the law governing the agency.'
(*Henning, supra,* at p. 757.) '"The task of the reviewing court in
such a case is to decide whether the [agency] reasonably
interpreted [its] legislative mandate. . . . Such a limited scope of
review constitutes no judicial interference with the
administrative discretion in that aspect of the rulemaking
function which requires a high degree of technical skill and
expertise. . . . [T]here is no agency discretion to promulgate a
regulation which is inconsistent with the governing statute. . . .
Whatever the force of administrative construction . . . final
responsibility for the interpretation of the law rests with the
courts. . . . Administrative regulations that alter or amend the
statute or enlarge or impair its scope are void. . . ." [Citation.]'
(*Id.* at pp. 757-758.)" (*Edwards, supra*, 26 Cal.App.5th at
p. 1189.)

"When construing constitutional provisions and statutes,
including those enacted through voter initiative, '[o]ur primary
concern is giving effect to the intended purpose of the provisions
at issue. [Citation.] In doing so, we first analyze provisions' text
in their relevant context, which is typically the best and most
reliable indicator of purpose. [Citations.] We start by ascribing
to words their ordinary meaning, while taking account of related
provisions and the structure of the relevant statutory and
constitutional scheme. [Citations.] If the provisions' intended
purpose nonetheless remains opaque, we may consider extrinsic
sources, such as an initiative's ballot materials. [Citation.]
Moreover, when construing initiatives, we generally presume
electors are aware of existing law. [Citation.] Finally, we apply
independent judgment when construing constitutional and
statutory provisions. [Citation.]' (*California Cannabis Coalition*

6

*v. City of Upland* (2017) 3 Cal.5th 924, 933-934 . . . .)" (*Edwards, supra*, 26 Cal.App.5th at p. 1189.)

C. *Analysis*

Section 32(a)(1) provides, "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." The reference to "convicted" and "sentenced," in conjunction with present eligibility for parole once a full term is completed, make clear that early parole eligibility must be assessed based on the conviction for which an inmate is now serving a state prison sentence (the current offense), rather than prior criminal history. This interpretation is supported by section 32(a)(1)'s use of the singular form in "felony offense," "primary offense," and "term."

Gadlin's current offense triggering his Three Strikes sentence is assault with a deadly weapon (§ 245, subd. (a)(1)), which does not require registration as a sex offender. CDCR argues that its application of the regulations to exclude inmates who have sustained prior registrable convictions is consistent with its determination that registrable sex offenses involve a sufficient degree of violence and registrable inmates represent an unreasonable risk to public safety. These policy considerations, however, do not trump the plain text of section 32(a)(1).

CDCR's application of section 3491(b)(3) to exclude Gadlin and all similarly situated inmates from early parole consideration runs afoul of section 32(a)(1). Gadlin is entitled to early parole

7

consideration.[3]

We express no opinion on whether CDCR's application of its regulations to exclude inmates whose current offense requires registration as a sex offender similarly violates section 32(a)(1).

## IV.  DISPOSITION

The petition for habeas corpus is granted.  The California Department of Corrections and Rehabilitation is directed to consider Gadlin for early parole consideration within 60 days of remittitur issuance.

KIM, J.

I concur:

MOOR, J.

---

[3]    We note that this holding only permits Gadlin early parole consideration, not release.  The Board of Parole Hearings will be permitted to consider his full criminal history, including his prior sex offenses, in deciding whether a grant of parole is warranted. (§ 3041, subd. (b); Cal. Code Regs., tit. 15, § 2449.32, subd. (c).)

In re Gregory Gadlin
B289852


BAKER, Acting P. J., Concurring


      The opinion of the court resolves the appeal before us on narrow grounds, correctly concluding that regulations promulgated by the California Department of Corrections and Rehabilitation (CDCR) are unconstitutional as applied to bar early parole consideration for petitioner Gregory Gadlin (petitioner) based on two prior sex offenses committed in the 1980s for which petitioner has already been imprisoned and released.

      Almost always, the wise choice is to refrain from saying more than necessary to dispose of an appeal. But under the unusual circumstances here where the parties have briefed the issue in broader terms—effectively, whether the regulatory prohibition of early parole consideration for sex offender registrants is facially consistent with the pertinent provisions of Proposition 57, the Public Safety and Rehabilitation Act of 2016—and where all concerned would benefit from knowing sooner rather than later what regulatory approaches are permissible, I believe there is good reason to say a bit more than strictly necessary. I therefore write separately to outline my view that the regulatory provisions in question are not inconsistent on their face with the provisions added to the constitution by Proposition 57.

      In my view, Proposition 57 authorizes the Secretary of the CDCR to adopt rules that exclude from early parole consideration

those inmates who are currently in custody as a result of an offense that would require registration as a sex offender. Succinctly put, I believe the Secretary has that authority because he acts pursuant to an express grant of authority to promulgate regulations to implement an initiative with an undefined term, because a clear textual indication that Proposition 57 was intended to bar regulatory exclusion of current-offense sex offenders is absent (which distinguishes this case from our holding in *In re Edwards* (2018) 26 Cal.App.5th 1181 (*Edwards*)), and because the ballot materials for Proposition 57—including a ballot argument signed by the then-sitting Governor that addresses whether early parole consideration for nonviolent felony offenses extends to sex offenders—illuminate an ambiguity about the intended scope of the initiative and illustrate why CDCR's regulatory approach cannot be deemed inconsistent with the voters' intent.

I

Two provisions that Proposition 57 added to our state Constitution are important in this appeal. The first is the provision enacted as Article I, section 32, subdivision (a)(1) (hereafter section 32(a)). It reads: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." The second is the provision in the next subdivision: "The Department of Corrections and Rehabilitation shall adopt regulations in furtherance of these provisions, and the Secretary of the Department of Corrections and Rehabilitation shall certify that these regulations protect

2

and enhance public safety." (Cal. Const., art. I, § 32, subd. (b) (hereafter section 32(b).)

In regulations promulgated pursuant to section 32(b), the Secretary adopted the Penal Code's definition of a "violent felony" for use in defining what "nonviolent felony offense" means as used in section 32(a). (Cal. Code Regs., tit. 15, §§ 3490, subds. (a)-(c) [with additional qualifications not relevant here, an inmate is a nonviolent offender if the inmate is not serving a determinate sentence for a crime listed in the Penal Code's definition of a violent felony], 3495, subds. (a)-(b) [same for indeterminate sentences]; see also Pen. Code, § 667.5, subd. (c) [defining "violent felony"].) As relevant here, the Penal Code definition includes a significant number of sex crimes: specified forms of rape, sodomy, oral copulation, and committing a lewd or lascivious act; sexual penetration by a foreign object; assault with intent to commit specified sex crimes (including rape, sodomy, and oral copulation), continuous sexual abuse of a child, and specified sex crimes committed in concert. (Pen. Code, § 667.5, subds. (c)(3)-(6), (11), (15)-(16), (18).) Inmates currently serving a sentence as a result of these sex crimes are ineligible for early parole consideration (Cal. Code Regs., tit. 15, §§ 3491, subd. (a), 3496, subd. (a)) and there is no dispute about that.

What is disputed by the parties is a further step taken by the CDCR regulations promulgated pursuant to section 32(b), a step that makes offenders who have committed other sex-related offenses ineligible for early parole consideration. Specifically, the regulations bar early parole consideration for any inmates "convicted of a sexual offense that currently requires or will require registration as a sex offender under the Sex Offender Registration Act, codified in sections 290 through 290.024 of the

3

Penal Code." (Cal. Code Regs., tit. 15, §§ 3491, subd. (b)(3), 3496, subd. (b).) To understand the significance of this regulatory exclusion, we must compare the crimes that trigger mandatory sex offender registration with those sex offenses defined as violent felonies under Penal Code section 667.5; where there is no overlap between the two is where the regulations' sex offender registration exclusion is operative.

Penal Code section 290 is the principal statutory provision that defines the crimes for which a convicted defendant must register as a sex offender. The statute's list of crimes (as it existed at the time of Proposition 57's passage) is long. It provides: "Any person who, since July 1, 1944, has been or is hereafter convicted in any court in this state or in any federal or military court of a violation of Section 187 [murder] committed in the perpetration, or an attempt to perpetrate, rape or any act punishable under Section 286 [sodomy], 288 [lewd or lascivious conduct], 288a [oral copulation], or 289 [forcible penetration], Section 207 or 209 [kidnapping] committed with intent to violate Section 261 [rape], 286, 288, 288a, or 289, Section 220 [assault with intent to commit rape, sodomy, or oral copulation], except assault to commit mayhem, subdivision (b) and (c) of Section 236.1 [human trafficking], Section 243.4 [sexual battery], paragraph (1), (2), (3), (4), or (6) of subdivision (a) of Section 261 [rape, except rape by false impersonation of a person known to the victim], paragraph (1) of subdivision (a) of Section 262 [spousal rape] involving the use of force or violence for which the person is sentenced to the state prison, Section 264.1 [rape in concert], 266 [enticement of a minor for prostitution], or 266c [fear-induced sex acts], subdivision (b) of Section 266h [pimping a minor], subdivision (b) of Section 266i [pandering a minor],

4

Section 266j [procuring a minor for lewd and lascivious conduct], 267 [abduction for prostitution], 269 [aggravated child sexual assault], 285 [incest], 286, 288, 288a, 288.3 [contacting a minor to commit a sex offense], 288.4 [arranging a meeting with a minor to engage in lewd or lascivious conduct], 288.5 [continuous sexual abuse of a child], 288.7 [sex or sodomy with a child under ten years old], 289, or 311.1 [sale of child pornography], subdivision (b), (c), or (d) of Section 311.2 [production and distribution of child pornography], Section 311.3 [child sexual exploitation], 311.4 [employing a minor in sale or distribution of child pornography], 311.10 [advertising child pornography], 311.11 [possession of child pornography], or 647.6 [annoying or molesting children], . . . , subdivision (c) of Section 653f [solicitation of rape by force or violence, sodomy by force or violence, or oral copulation by force or violence], subdivision 1 or 2 of Section 314 [indecent exposure], any offense involving lewd or lascivious conduct under Section 272 [contributing to the delinquency of a minor], or any felony violation of Section 288.2 [sending "harmful matter," i.e. patently offensive sexual matter, to a minor] . . . ."  (Former Pen. Code, § 290, added by Stats. 2007, ch. 579, § 8.)

Comparing this list of registrable offenses to the categories of crimes statutorily deemed violent, there are many offenders who will be barred from early parole consideration under the CDCR regulations even though those offenders have not been convicted of a violent felony as defined by the Penal Code. Among them are those convicted of human trafficking, sexual penetration accomplished when the victim is prevented from resisting by an intoxicating or anesthetic substance, solicitation of another to commit rape by force or violence, pimping a minor,

5

and various child sexual exploitation offenses.[1]  (Pen. Code, §§ 236.1, 289, subd. (e), 653f, subd. (c), 266h, subd. (b); see also, e.g., Pen. Code, § 311.3.)  The question is whether we can discern an intent by California voters to preclude the Secretary from exercising the regulatory authority they conferred upon him in the manner he has.

II

The fundamental objective when interpreting constitutional provisions and statutes is "is giving effect to the intended purpose of the provisions at issue." (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933.)  "In doing so, we first analyze provisions' text in their relevant context, which is typically the best and most reliable indicator of purpose.  [Citations.]  We start by ascribing to words their ordinary meaning, while taking account of related provisions and the structure of the relevant statutory and constitutional scheme.  [Citations.]  If the provisions' intended purpose nonetheless remains opaque, we may consider extrinsic sources, such as an initiative's ballot materials." (*Id.* at pp. 933-934; see also *People v. Valencia* (2017) 3 Cal.5th 347, 358 ["A reason to further explore the meaning of statutory language and to consider extrinsic evidence of legislative intent is where statutory language is ambiguous when considered 'in the context of the statute and initiative as a whole'"] (*Valencia*).)

Examining Article I, Section 32 of our constitution as a whole, the precise scope of who is meant to benefit from early

---

[1]     Also among them are those convicted of indecent exposure. (Pen. Code, § 314.)

6

parole consideration relief is left fuzzy at the margins. Section 32(a) states the rule—that those convicted of a "nonviolent felony offense" and sentenced to state prison are eligible for parole consideration—but the key term, nonviolent felony offense, is noticeably left undefined (see *Brown v. Superior Court* (2016) 63 Cal.4th 335, 360 (dis. opn. of Chin, J.)) even though it cannot be applied in practice without further definition. That is where section 32(b) comes in, directing the Secretary to "adopt regulations in furtherance of these provisions." That direction is a textually explicit grant of authority that must at least extend to clarifying the margins of what constitutes a nonviolent felony offense.

As we know, the Secretary makes reference to the Penal Code section 667.5 definition when crafting a regulatory definition of "nonviolent offender." That choice was not constitutionally compelled, but it is consistent with the ballot arguments authored by the proponents of Proposition 57. (Cal. Code Regs., tit. 15, §§ 3490, subds. (a)-(c), 3495, subds. (a)-(b); Ballot Pamp., Gen. Elec. (Nov. 8, 2016) rebuttal to argument against Prop. 57, p. 59 ["Violent criminals as defined in Penal Code [section] 667.5(c) are excluded from parole"].) Although the regulations make use of Penal Code section 667.5 in defining "nonviolent offender" (Cal. Code Regs., tit. 15, §§ 3490, subds. (a)-(c), 3495, subd. (a)), I do not believe we are required, when undertaking a holistic review of the constitutional provisions and the regulations themselves, to understand sections 3490, subdivision (c) and 3495, subdivision (b) in isolation, i.e., as the only means by which CDCR sought to flesh out the relevant constitutional term—"nonviolent felony offense." Rather, CDCR was entitled, consistent with the text of Article I, Section 32 of

7

our Constitution, to conclude that it was appropriate to make use of the Penal Code's definition of "violent felony" *only concomitant with* a regulatory exclusion for those subject to sex offender registration.

That conclusion is fully consistent with our decision in *Edwards*, *supra*, 26 Cal.App.5th 1181 because we were not there asked to decide the meaning and scope of "nonviolent felony offense." Rather, CDCR conceded Edwards was imprisoned for a nonviolent felony offense and the issue for our decision was whether CDCR's formerly adopted regulations "validly exclude admittedly nonviolent 'Third Strike' offenders sentenced to indeterminate [prison] terms from Proposition 57 relief." (*Id*. at pp. 1184, 1186, 1191.) We, of course, held the answer was no, and importantly, that was our answer because there was an explicit textual basis in the constitutional provisions added by Proposition 57 that revealed barring relief for those serving indeterminate Three Strikes sentences was inconsistent with the voters' intent. (*Id*. at p. 1190 ["There is no question that the voters who approved Proposition 57 intended Edwards and others serving Three Strikes indeterminate sentences to be eligible for early parole consideration; the express exclusion of alternative sentences when determining the full term is dispositive"]; see also § 32(a)(1)(A) ["For purposes of this section only, the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, *excluding the imposition of an enhancement, consecutive sentence, or alternative sentence*"], italics added.) *Edwards* therefore does not answer the question I take on here because absent from the text of section 32 is any

explicit direction as to whether sex offenders should be eligible for Proposition 57 relief.[2]

Proposition 57's ballot materials, however, were anything but silent on that score. In the argument against Proposition 57, the opponents of the initiative warned "[t]he authors of Proposition 57 claim it only applies to 'non-violent' crimes, but their poorly drafted measure deems the following crimes 'non-violent' and makes the perpetrators eligible for EARLY PAROLE and RELEASE into local communities: [¶] ● Rape by intoxication

---

[2] Those voting for Proposition 57 could have reasonably thought the term "nonviolent felony offense" would not encompass sex crimes against adults and children, many of which involve what are at least arguably elements of violence as popularly conceived. (See, e.g., Pen. Code, §§ 236.1, subd. (b) ["A person who deprives or violates the personal liberty of another with the intent to effect or maintain a violation of Section 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking and shall be punished by imprisonment in the state prison for 8, 14, or 20 years and a fine of not more than five hundred thousand dollars ($500,000)"].) That is true even as to child pornography offenses, where some have argued such offenses are linked to crimes of violence, if not crimes of violence themselves. (See, e.g., *American Booksellers Ass'n, Inc. v. Hudnut* (7th Cir. 1985) 771 F.2d 323, 328-329 & fns. 1 & 2; *United States v. Cocco* (M.D. Pa. 1985) 604 F.Supp. 1060, 1062.) Indeed, CDCR's statement of reasons accompanying the formerly adopted regulations relied on just such a broad understanding of violence. (Cal. Dept. of Corrections, Credit Earning and Parole Consideration Final Statement of Reasons, April 30, 2018, p. 20 ["The department has determined that these sex offenses demonstrate a sufficient degree of violence and represent an unreasonable risk to public safety to require that sex offenders be excluded from nonviolent parole consideration"].)

9

● Rape of an unconscious person ● Human Trafficking involving sex act with minors . . . ."  (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) argument against Prop. 57, p. 59.)  The proponents—including California's sitting Governor at the time (who was identified as such in the ballot pamphlet)—answered the charge that those convicted of sex crimes like human trafficking would benefit from Proposition 57.  In their rebuttal argument, they asserted Proposition 57 "[d]oes not and will not change the federal court order that excludes sex offenders, as defined in Penal Code [section] 290, from parole."  (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) rebuttal to argument against Prop. 57, p. 59.)  The "federal court order" referenced by the proponents was left unspecified, but the import of their assertion was clear enough to everyday voters: do not be alarmed, those sex offenders specified in Penal Code section 290 will be excluded from benefitting from early parole consideration.

The ballot arguments are highly significant in my view because they help establish how voters expected, and we can infer intended, CDCR to more precisely define the group of offenders who would benefit from Proposition 57 that the text of the initiative left ambiguous at the margins.[3]  (See generally

---

[3]    It appears CDCR framed its overall approach to defining "nonviolent felony offense" by relying on the ballot arguments that provide helpful clues to voter intent where the text of the initiative does not.  Just as the proponents of the measure argued "[v]iolent criminals as defined in Penal Code [section] 667.5(c) are excluded from parole," CDCR's regulations exclude from early parole consideration those convicted of a violent felony within the meaning of that Penal Code provision.  And just as the proponents assured sex offenders within the meaning of Penal

10

*Valencia, supra*, 3 Cal.5th at p. 364 [courts examine the materials before the voters to resolve questions of purpose and ambiguity].)  Proposition 57's proponents assured voters that those required to register as sex offenders would not benefit from the initiative, and that assurance leaves me convinced voters did not intend to preclude CDCR from promulgating regulations that preclude relief for state prison inmates incarcerated for a current crime that requires registration as a sex offender.

The problem in this case, of course, is that section 3496, subdivision (b) of CDCR's regulations was applied to bar early parole consideration for petitioner based not on an offense for which he is now incarcerated but on older crimes for which he was long ago released from prison.  That is why I concur in the result reached by the majority.[4]

BAKER, Acting P. J.

---

Code section 290 would be excluded from parole, the regulations enforce that exclusion.

[4]     Although I have said more than the majority does, there are still questions I too leave for another day, among them the question of whether an inmate incarcerated for indecent exposure could successfully challenge the sex offender regulatory exclusion as unconstitutional under Proposition 57 as applied to him or her.

11