Filed 5/16/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| In re TIJUE ADOLPHUS McGHEE<br><br>on Habeas Corpus. | A153721<br><br>(Alameda County<br>Super. Ct. No. FCR331651)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 29, 2019, be modified as follows:

On page 10, at the end of the first sentence in the last paragraph insert: —to "ensure[] that the board focuses its resources on inmates who are more likely to be found suitable for parole." (Statement of Reasons, p. 17.), and delete the second sentence, so that the first two sentences read:

> We do not gainsay the practical issues presented by implementation of section 32, subdivision (a)(1) as intended, nor do we fail to recognize the sensible rationale underlying the department's two-tiered scheme—to "ensure[] that the board focuses its resources on inmates who are more likely to be found suitable for parole." (Statement of Reasons, p. 17.) Nonetheless, although an inmate may not be paroled soon after committing such an offense, the appearance before the board may still serve a constructive purpose.

There is no change in the judgment.

Date: May 16, 2019      _____ Acting P.J.

1

Trial court:                         Alameda County Superior Court

Trial judge:                        Honorable Daniel Healy

Counsel for petitioner:          Jonathan Soglin and L. Richard Braucher by appointment of the Court of Appeal

Counsel for respondent:        Xavier Becerra, Attorney General,
Phillip J. Lindsay, Senior Assistant Attorney General
Sara J. Romano, Supervising Deputy Attorney General
Brian C. Kinney, Deputy Attorney General

A153721

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| In re TIJUE ADOLPHUS McGHEE<br><br>on Habeas Corpus. | A153721<br><br>(Alameda County<br>Super. Ct. No. FCR331651) |
| --- | --- |

We confront another attempt by the California Department of Corrections and Rehabilitation (the department) to curtail the right created by Proposition 57 of numerous inmates to parole consideration by the Board of Parole Hearings (the board). Proposition 57, The Public Safety and Rehabilitation Act of 2016, added a provision to California's Constitution stating: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." (Cal. Const., art. I, § 32, subd. (a)(1).)[1] In *In re Edwards* (2018) 26 Cal.App.5th 1181, Division Five of the Second Appellate District struck down a department regulation that excluded nonviolent third strike offenders sentenced to indeterminate terms from parole consideration. The court rejected the department's explanation that "parole eligibility only applies to determinately sentenced inmates and, furthermore, public safety requires their exclusion" (*id.* at p. 1188), finding the argument "at war with the straightforward textual conclusion" (*id.* at p. 1190) that eligible inmates sentenced to indeterminate terms are entitled to parole consideration. In *In re Gadlin* (2019) 31 Cal.App.5th 784, the same court held that a revised regulation adopted following the *Edwards* decision could not validly exclude from parole consideration inmates previously convicted of an offense requiring registration as a sex offender but who are currently serving time for a nonviolent felony.

_____

[1] All further references to section 32 are to article I, section 32 of the California Constitution.

1

In response to the department's argument that "registrable inmates represent an unreasonable risk to public safety," the court ruled "[t]hese policy considerations . . . do not trump the plain text of section 32, subdivision (a)(1)." (31 Cal.App.5th at p.789.)

We now hold that the department's creation of a screening and referral process that excludes from parole consideration more than a third of otherwise eligible inmates based on their in-prison conduct is at odds with the clear language of the constitutional amendment. Despite the policy considerations advanced by the department, section 32, subdivision (a)(1) mandates that these prisoners receive parole consideration if they have been convicted of a nonviolent felony and have served the full term of their primary offense.

## BACKGROUND

Petitioner Tijue Adolphus McGhee pleaded guilty in 2012 to first degree burglary (Pen. Code, §§ 459, 460, subd. (a)). He received a four-year prison sentence for the burglary, plus five additional years for a prior felony conviction (Pen. Code, § 667, subd. (a)(1)).

In November 2016, the electorate passed Proposition 57, The Public Safety and Rehabilitation Act of 2016. Proposition 57 added section 32 to article I of the state Constitution. Subdivision (a) of section 32 states that its provisions are "enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law."

Under subdivision (a)(1) of section 32, "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." For that purpose, "the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or

2

alternative sentence." (§ 32, subd. (a)(1)(A).) Subdivision (b) of section 32 directs the department to "adopt regulations in furtherance of these provisions."[2]

In response, the department created a "new parole consideration process for nonviolent offenders" (see "The Initial Statement of Reasons in Support of Regulations to Be Adopted in Compliance with New Section 32 of Article I of the California Constitution"), patterned largely after the procedures that it had previously adopted to screen nonviolent second-strikers for parole consideration to comply with a federal court mandate to reduce California's prison population. (See, e.g., *Coleman v. Brown* (E.D. Cal. Feb. 10, 2014, No. 2:90-cv-0520 LKK DAD (PC)) 2014 U.S.Dist. Lexis 17913.) The department promulgated in division 3 of title 15 of the California Code of Regulations a new subchapter 5.5, titled "Parole Consideration." Section 3491 of the new subchapter specifies those inmates who are deemed nonviolent offenders and thus become "eligible" for parole consideration. The provisions of section 3491 are not challenged in the present action. However, section 3492, titled "Public Safety Screening and Referral," provides that eligible inmates will first be screened by the department and referred to the board "for parole consideration under [the regulations concerning hearings before the board]" only if the inmates satisfy eight criteria, all of which require the absence of serious or multiple disciplinary violations while in prison. According to the statement of reasons, "Under these criteria, nonviolent offenders will automatically be screened out if their prison records establish they have recently committed serious misconduct indicating they pose an unreasonable risk of violence." (Statement of Reasons, p. 17.)

On July 1, 2017, McGhee was advised that although he is "eligible," he would not be referred to the board for parole consideration because he did not satisfy two of the criteria. First, McGhee had "served a Security Housing Unit term in the past five years" that was not assessed "solely for the inmate's safety" (Cal. Code Regs., tit. 15, § 3492, subd. (c)(3).) According to the statement of reasons, "[p]lacement in a Security Housing

---

[2] Subdivision (a)(2) of section 32 authorizes the department to award credits for good behavior and approved rehabilitative or educational achievements.

3

Unit is reserved for the most serious offenses committed in prison." Second, McGhee had "been found guilty of a serious rule violation for a Division A-1 or Division A-2 offense . . . within the past five years." (Cal. Code Regs., tit. 15, § 3492, subd. (c)(4).) The A-1 and A-2 offenses are considered by the department to be tantamount to "in-prison felony offenses" (Statement of Reasons, p. 18) and range from murder to distribution of a controlled substance. (Cal. Code Regs., tit. 15, § 3323, subds. (b), (c).) McGhee's underlying offense under both criteria was possession of an inmate-manufactured weapon, to which he pleaded guilty in August 2015.[3]

McGhee filed an administrative appeal challenging the department's decision not to refer him to the board. The department denied McGhee's appeal at the first two levels of review. McGhee then filed a petition for a writ of habeas corpus in this court challenging the department's refusal to refer him to the board. At the time McGhee filed his petition, his administrative appeal challenging the decision was pending at the department's third and final level of review. After McGhee's appeal was denied at the third level, we issued an order to show cause and appointed counsel for McGhee. McGhee's appointed counsel has filed a supplemental petition contending that the department's screening regulations conflict with section 32, subdivision (a)(1) and should

---

[3] The additional criteria specified in section 3492, subdivision (c) of the California Code of Regulations, not directly relevant to McGhee's denial of review, are these: "(1) The inmate is not currently serving a Security Housing Unit term; [¶] (2) The Institutional Classification Committee has not assessed the inmate a Security Housing Unit term within the past five years, unless the department assessed the Security Housing Unit term solely for the inmate's safety; [¶] . . . [¶] (5) The inmate has not been assigned to Work Group C . . . in the past year; [¶] (6) The inmate has not been found guilty of two or more serious Rules Violation Report in the past year; [¶] (7) The inmate has not been found guilty of a drug-related offense . . . or refused to provide a urine sample . . . in the past year; [¶] (8) The inmate has not been found guilty of any Rules Violation Reports in which a Security Threat Group nexus was found in the past year." Subdivision (c) also provides that an inmate will be referred to the board for parole consideration only if the "inmate's nonviolent parole eligible date falls at least 180 calendar days prior to his or her earliest possible release date and the inmate will not reach his or her earliest possible release date for at least 210 calendar days."

be invalidated. The department, represented by the Attorney General, has filed a return to the order to show cause defending the validity of the regulations.

## DISCUSSION

McGhee contends the regulations are invalid because they are inconsistent with the mandate in section 32, subdivision (a)(1) that "[a]ny person convicted of a nonviolent felony and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." McGhee argues that the term "parole consideration" means consideration for release by the board. Because the challenged regulations preclude consideration by the board for otherwise eligible inmates who have committed certain in-prison offenses, McGhee contends the regulations conflict with section 32 and must be stricken.

The department defends the regulations, claiming they are part of a "two-tiered" process that is "consistent with the term 'parole consideration.' " The department describes the process as follows: "The first phase of the process objectively evaluates whether the inmate's file contains one or more of the eight criteria [the department] has identified as categorical proof the inmate being reviewed 'pose[s] an unreasonable risk of violence' based on he or she having 'recently committed serious [in-prison] misconduct.' . . . If none of the eight criteria are present, the inmate's file is next reviewed holistically by a board official to determine whether the inmate's release poses an unreasonable risk of future violence and/or risk of significant criminal activity." The department contends that inmates who "fail to advance to the second phase of the parole-review process are not deprived of parole consideration." Rather, "those inmates are considered but denied parole during the first stage of the process."

The standard of review in evaluating the validity of the department's regulations was explained in *In re Edwards*, *supra,* 26 Cal.App.5th at page 1189: " 'In order for a regulation to be valid, it must be (1) consistent with and not in conflict with the enabling statute and (2) reasonably necessary to effectuate the purpose of the statute. (Gov. Code, § 11342.2).' [Citations.] Therefore, 'the rulemaking authority of the agency is circumscribed by the substantive provisions of the law governing the agency.' [Citation.]

5

' "The task of the reviewing court in such a case is to decide whether the [agency] reasonably interpreted [its] legislative mandate. . . . Such a limited scope of review constitutes no judicial interference with the administrative discretion in that aspect of the rulemaking function which requires a high degree of technical skill and expertise. . . . [T]here is no agency discretion to promulgate a regulation which is inconsistent with the governing statute. . . . Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts. . . . Administrative regulations that alter or amend the statute or enlarge or impair its scope are void." ' "

In construing section 32, subdivision (a)(1), we apply normal standards governing the interpretation of constitutional provisions. " '[O]ur primary concern is giving effect to the intended purpose of the provisions at issue. [Citation.] In doing so, we first analyze provisions' text in their relevant context, which is typically the best and most reliable indicator of purpose. [Citations.] We start by ascribing to words their ordinary meaning, while taking account of related provisions and the structure of the relevant statutory and constitutional scheme. [Citations.] If the provisions' intended purpose nonetheless remains opaque, we may consider extrinsic sources, such as an initiative's ballot materials. [Citation.] Moreover, when construing initiatives, we generally presume electors are aware of existing law. [Citation.] Finally, we apply independent judgment when construing constitutional and statutory provisions.' " (*In re Edwards*, *supra,* 26 Cal.App.5th at p. 1189)

Applying these well-settled principles, the process the department has created in section 3492 of its regulations, by which the department screens out otherwise eligible inmates from parole consideration by the board, cannot be upheld. The permissibility of the "two-tiered" process is based on the premise that the "parole consideration" mandated by section 32, subdivision (a)(1), need not necessarily be conducted by the board, and that the department itself may determine that an inmate is unsuitable for parole. This premise is unsupportable.

The reference to parole consideration in the constitutional amendment can only be understood to mean parole consideration by the board. The board is "the administrative

6

agency within the executive branch that generally is authorized to grant parole and set release dates." (*In re Lawrence* (2008) 44 Cal.4th 1181, 1201.) In every statute and regulation concerning the subject of parole, "parole consideration" refers to consideration for parole by the board. Within title 7 of the Penal Code, governing administration of the state correctional system, chapter 3, commencing at section 5075, creates the board and specifies its authority.[4] The board is empowered to, among other duties, "[c]onduct parole consideration hearings" for adults under the department's jurisdiction. (Pen. Code, § 5075.1, subd. (a).) Within title 15 of the California Code of Regulations, Division 2 addresses the role and procedures of the board. Section 2000, subdivision (b)(10) of the regulations defines the board as "[t]he administrative board responsible for setting parole dates, establishing parole length and conditions, . . . granting, rescinding, suspending, postponing or revoking paroles . . . ." The board's regulations are replete with references to "parole consideration," referring always to consideration by the board alone. (E.g., Cal. Code Regs., tit. 15, § 2152 [administrative review to determine whether to advance date of inmate's "next parole consideration hearing"]; Cal. Code Regs., tit. 15, art. 5, § 2280 et seq. ["Parole Consideration Criteria and Guidelines for Life Prisoners"]; Cal. Code Regs., tit. 15, § 2280 ["life prisoner shall be considered for parole for the first time at the initial parole consideration hearing"]; Cal. Code Regs., tit. 15, § 2304 ["Initial Parole Hearing: [¶] (a) . . . At this hearing the prisoner shall be considered for parole for the first time. The hearing panel shall first determine whether the prisoner is unsuitable for parole under the criteria in Section 2316."]; Cal. Code Regs., tit. 15, art. 7, § 2315 et seq. ["Parole Consideration Criteria and Guidelines for [Indeterminate Sentence Law] Prisoners"]; Cal. Code Regs., tit. 15, art. 11, § 2400 et seq. ["Parole Consideration Criteria and Guidelines for Murders . . . and Specified Attempted Murders"]; Cal. Code Regs., tit. 15, art. 12, § 2420 et seq. ["Parole Consideration Criteria and Guidelines for Habitual Offenders Sentenced to Life Terms under Penal Code Section 667.7"].) Under these regulations, the

---

[4] Penal Code section 5075, subdivision (a) abolishes the former Board of Prison Terms and provides that any statutory reference to the Board of Prison Terms shall refer to the Board of Parole Hearings.

board conducts a "parole consideration hearing" for inmates at which it reviews "[a]ll relevant, reliable information available" and first determines whether the inmate will pose an unreasonable risk of danger to society if released from prison. (E.g., Cal. Code Regs., tit. 15, §§ 2281, subds. (a), (b); 2402, subd. (a), (b); 2422, subds. (a), (b).) "Title 15, section 2281 of the California Code of Regulations sets forth the factors to be *considered by the Board* in carrying out the mandate of the statute. The regulation is designed to guide the *Board's assessment* of whether the inmate poses 'an unreasonable risk of danger to society if released from prison.' " (*In re Lawrence, supra,* 44 Cal.4th at p. 1202, italics added.)

This statutory and regulatory scheme, referring to parole consideration by the board, was in place when Proposition 57 went before the voters. We presume that voters were aware of the state's parole process at the time they passed the proposition. (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 934.).

Moreover, the ballot pamphlet provided to voters confirmed that parole consideration referred to consideration for parole by the board. (See *People v. Valencia* (2017) 3 Cal.5th 347, 364 [courts should analyze materials put before the voters to ascertain voter intent].) The background section of the pamphlet contains a section titled "*Parole Consideration Hearings*" that explains how the board conducts parole consideration hearings to determine whether inmates are "ready to be released from prison." (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) background, p. 54.) The pamphlet then indicates that Proposition 57 would provide the same type of hearing to individuals convicted of nonviolent felonies; the pamphlet explains that inmates convicted of nonviolent felonies are "eligible for parole consideration" after serving the full term of their primary offense, and that the board "would decide whether to release these individuals." (Ballot Pamp., Gen. Elec., *supra*, analysis by the legislative analyst, p. 56.) The pamphlet indicates that the screening of inmates to determine their suitability for parole will be conducted by the board: "The Board of Parole Hearings—made up mostly of law enforcement officials—determines who is eligible for release." (Ballot Pamp., Gen. Elec., *supra*, argument in favor of Prop. 57, p. 58.)

Deeming the department's newly created screening process consistent with, much less a part of, the parole consideration mandated by section 32, subdivision (a)(1) is a misconstruction of the language of the constitutional provision and is contrary to the intent of section 32, subdivision (a)(1). The parole consideration process defined in division 2 of title 15 specifies that the board shall determine whether an inmate is or is not suitable for parole. While the criteria under the department's new screening process undoubtedly bear on whether an inmate is suitable for parole, that ultimate determination is to be made by the board, not the department.

The department argues that the challenged regulations should be upheld as within the department's discretion. But there is " 'no agency discretion to promulgate a regulation which is inconsistent with the governing statute.' " (*Ontario Community Foundations, Inc. v. State Bd. of Equalization* (1984) 35 Cal.3d 811, 816, italics omitted.) While Proposition 57 delegated rulemaking authority to the department to "fill up the details," as the Attorney General argues, the exclusion of otherwise eligible inmates from board consideration is hardly a detail.

The department defends its regulation by pointing to one of the stated purposes of Proposition 57: to "avoid the release of prisoners by federal court order." (§ 32, subd. (a).) While Proposition 57 undoubtedly was intended to maintain the inmate population at a level that complies with the federal court order (see *Coleman v. Brown, supra,* 2014 U.S.Dist. Lexis 17913)*,* it does not follow that section 32, subdivision (a)(1) permits the department rather than the board to determine whether an inmate is suitable for parole. Neither section 32, subdivision (a)(1) nor the Proposition 57 ballot materials suggest such a screening process. In its report to the federal court on the parole process for second-strike offenders (filed December 1, 2014), the department recognized that the guidelines it developed to screen second strikers was part of a "referral process" to the board for parole consideration, not parole consideration itself.[5] Moreover, if anything,

_____

[5] Indeed the challenged regulation implicitly recognizes as much. Section 3492, subdivision (d) of title 15 of the California Code of Regulations provides: "Within five business days of being screened, inmates who are eligible for referral under this section

9

requiring all eligible nonviolent inmates to obtain parole consideration by the board advances compliance with the federal court order, since it increases the pool of inmates who will be considered for parole and potentially released from prison.

The department also argues that invalidating the regulation will create practical problems that ultimately will defeat the purpose of Proposition 57. The department states that between July 1, 2017 and June 30, 2018, approximately 10,900 nonviolent inmates were eligible for parole consideration, but that only approximately 6,363 of these inmates were referred to the board for review; 4,450 were not referred because they did not pass the department's screening process. The department argues that if the screening process is eliminated, the board will be compelled to review thousands more prison files annually and "[s]uch a result may not only undermine public safety, it could have the unintended consequence of fewer inmates being granted parole."

We do not gainsay the practical issues presented by implementation of section 32, subdivision (a)(1) as intended, nor do we fail to recognize the sensible rationale underlying the department's two-tiered scheme. Inmates with recent serious prison violations are unlikely to be found suitable for parole by the board. Nonetheless, although an inmate may not be paroled soon after committing such an offense, the appearance before the board may still serve a constructive purpose. For example, section 2304 of the board's regulations provides that if the board panel finds an indeterminate sentence law inmate unsuitable, "a written statement of the specific factual reasons for the denial shall be given to the prisoner. The hearing panel may recommend to the prisoner what steps may be undertaken to enhance the possibility of a grant of parole at a future hearing." (Cal. Code Regs., tit. 15, § 2304, subd. (a).)

The increase in the number of inmates eligible for parole consideration may well require an increase in board staffing, but an increased burden on the board necessarily was contemplated by Proposition 57. According to the ballot pamphlet, "As of September

shall be referred to the Board of Parole Hearings for *parole consideration* under article 15 of chapter 3 of division 2 of this title." (Italics added.)

2015, there were about 30,000 individuals in state prison who would be affected by the parole consideration provisions of the measure." (Ballot Pamp., Gen. Elec., *supra*, proposal, p. 56.) Thus, the need for an increase in personnel cannot be regarded as unanticipated. Moreover, we do not preclude the board from adjusting its procedures to accommodate the increased workload, so long as the board rather than the department determines the inmate's suitability for parole in compliance with its statutory mandate.

We unequivocally reject the assertion that compliance with Proposition 57 will undermine public safety. Before granting parole the board will continue to review the record of an eligible inmate to determine whether the inmate presents a risk to public safety. (Cal. Code Regs., tit. 15, § 2449.4, subd. (b).) In doing so, the board must consider "all relevant and reliable information." (*Ibid.*) There is no reason to assume that the board will be insensitive to the concern for public safety or will grant parole to those who present a public danger. By enforcing the mandate of section 32, subdivision (a)(1), we hold that McGhee and similar inmates are entitled to parole consideration, not that they are necessarily entitled to release.

Finally, we observe that the department's reference to the parole procedures in other jurisdictions does little to support the validity of its two-tiered procedure. The practice in other states is of minimal, if any, significance in determining the meaning of the measure adopted by Proposition 57. Beyond that, the parole processes of the states cited by the department do not indicate that inmates receive parole consideration even if a parole board never reviews the inmates' suitability for parole. In Nebraska, all inmates receive an initial parole hearing at which the parole board determines whether the inmate is "reasonably likely to be granted parole." Inmates then proceed on different tracks depending on the initial conclusion of the board. (Neb. Revs. Stats. § 83-1,111, subd. (1).) In Georgia, the parole board is required to apply a set of parole "guidelines" when reviewing inmates not serving life sentences. (Ga. Code Ann., § 42-9-40, subd. (a).) "However, nothing in the applicable statutes mandates that the guidelines control the final parole decision. The guidelines simply establish an initial date of eligibility for parole, and the ultimate grant or denial of parole to a prisoner who is eligible under the

11

guidelines remains a discretionary matter for the Board." (*Daker v. Ray* (Ga. 2002) 275 Ga. 205, 206 [563 S.E.2d 429].) In Arkansas and New Jersey, the parole boards employ an approach that is functionally opposite to the department's approach; rather than categorically deny a parole hearing to inmates with poor disciplinary records, the Arkansas and New Jersey parole boards screen for inmates with *positive records* and, in some cases, advance such inmates in the parole process without a hearing. (See Ark. Code Ann. § 16-93-615, subd. (a)(1)(D); N.J. Stat., § 30:4–123.55, subds. (a), (b).) Nothing in the procedures of these other states supports the assertion that a regulation that categorically prevents an eligible inmate from being reviewed by the parole board can be deemed parole consideration.

## DISPOSITION

The petition for habeas corpus is granted. The department is directed to treat as void and repeal the portions of section 3492 of title 15 of the California Code of Regulations challenged in this proceeding, and to make any further conforming changes necessary to render the regulations consistent with section 32, subdivision (a)(1) of article I of the California Constitution and this opinion. McGhee shall be referred to the board for parole consideration within 60 days after this court issues its remittitur, and the department shall thereafter proceed as required by law.


POLLAK, P. J.

WE CONCUR:

STREETER, J.
TUCHER, J.

12

Trial court:                      Alameda County Superior Court

Trial judge:                    Honorable Daniel Healy

Counsel for petitioner:         Jonathan Soglin and L. Richard Braucher by appointment of the Court of Appeal

Counsel for respondent:        Xavier Becerra, Attorney General,
Phillip J. Lindsay, Senior Assistant Attorney General
Sara J. Romano, Supervising Deputy Attorney General
Brian C. Kinney, Deputy Attorney General

A153721