Filed 2/13/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ALLIANCE FOR CONSTITUTIONAL SEX OFFENSE LAWS et al., | C087294 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2017-80002581-CU-WM-GDS) |
| v. | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Allen H. Sumner, Judge. Affirmed.

Xavier Becerra, Attorney General, Phillip J. Lindsay, Senior Assistant Attorney General, Jessica N. Blonien, Supervising Deputy Attorney General, and Maria G. Chan, Deputy Attorney General, for Defendants and Appellants.

Law Office of Janice M. Bellucci and Janice M. Bellucci for Plaintiffs and Respondents.

Kravis, Graham & Zucker and Randy Kravis, Ian Graham, and Bruce Zucker for Andrew Luster as Amicus Curiae on behalf of Plaintiffs and Respondents.

1

The California Department of Corrections and Rehabilitation (Department) continues its effort to draft implementing regulations restricting the categories of inmates eligible for early parole consideration following the voters' 2016 enactment of Proposition 57, also known as the Public Safety Rehabilitation Act. In this latest iteration, the Department challenges a trial court ruling striking down its regulation excluding from early parole consideration inmates serving sentences for current nonviolent sex offenses requiring them to register under Penal Code section 290.

On appeal, the Department claims that its regulation is supported by Proposition 57's overarching goal of protecting public safety and the requirement that the Secretary of the Department certify that the Department's regulations enhance public safety. Because the regulation contravenes the plain language of the statute, we affirm.

## BACKGROUND

*Proposition 57 and Early Parole Consideration*

In November 2016 California voters passed Proposition 57, The Public Safety and Rehabilitation Act of 2016. The initiative added section 32 to article I of the California Constitution which, among other things, provides for early parole consideration for inmates serving prison sentences for nonviolent offenses. The added section (Amendment) reads in part: "(a) The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law: [¶] (1) Parole Consideration: Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense. [¶] . . . [¶] (b) The Department of Corrections and Rehabilitation shall adopt regulations in furtherance of these provisions, and the Secretary of the Department of Corrections and Rehabilitation shall certify that these regulations protect and enhance public safety."

2

Section 2 of Proposition 57 states the voters' purposes, as relevant here, in approving the measure: "1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141.)

The Department adopted emergency regulations to implement the Amendment. (See Cal. Code Regs., tit. 15, former §§ 2449.1, 2449.2, 3490, 3491, Register 2017, No. 15 (Apr. 13, 2017).)[1] As relevant here, the regulations defined a "nonviolent offender" as an inmate who is *not* (1) condemned, incarcerated for a term of life without the possibility of parole, or incarcerated for a term of life with the possibility of parole; (2) serving a term of incarceration for a violent felony within the meaning of Penal Code section 667.5, subdivision (c); or (3) "[c]onvicted of a sexual offense that requires registration as a sex offender under Penal Code section 290." (Title 15, former §§ 3490, subds. (a) & (c), 2449.1, subds. (a) & (c), Register 2017, No. 15 (Apr. 13, 2017).) As required by the Amendment, the Secretary certified that the regulations as adopted "protect and enhance public safety for all Californians."

In an initial statement of reasons accompanying the regulations, the Department provided its justification for excluding sex offenders from the nonviolent parole consideration process: "[T]he crimes listed in [Pen. Code, § 290] reflect the determination of the people of the State of California (through initiatives and the legislature) that, 'Sex offenders pose a potentially high risk of committing further sex offenses after release from incarceration or commitment, and the protection of the public

---

[1] Further undesignated regulation references are to Title 15 of the California Code of Regulations (Title 15).

from reoffending by these offenders is a paramount public interest.' " (Cal. Dept. of Corrections, Initial Statement of Reasons NCR 17-05, July 14, 2017, p. 15.)

*Alliance's Petition*

In April 2017 John Doe and the Alliance for Constitutional Sex Offense Laws (collectively Alliance) filed a petition for writ of mandate in the superior court challenging the Department's definition of a "nonviolent offender" as categorically excluding sex offenders required to register under Penal Code section 290 regardless of whether California law defines their crimes as "violent." The Department responded that Proposition 57 did not define "nonviolent offense" but rather provided the Department with broad discretion to achieve its stated intent and to protect and enhance public safety.

*The Trial Court's Order*

The trial court granted Alliance's petition for writ of mandate and invalidated title 15, sections 3490, subdivision (a)(3) and 2449.1, subdivision (a)(3) of the emergency regulation, finding the Department's exclusion of sex offenders from early parole consideration conflicted with the voters' intent. It observed the Department did not contend the regulations exclude sex offenders from early parole consideration because they are "violent"; rather, the Department excluded sex offenders based on recidivism rates. The court directed the Department to define the term "nonviolent" in a manner consistent with article I, section 32, subdivision (a)(1) and the voters' directive.

*The Department's Final Regulations*

In May 2018 the Department issued final regulations purporting to implement Proposition 57.[2] (Title 15, §§ 3490, 3491, subd. (a), 2449.1, subd. (a).) The final

---

[2] We grant Alliance's unopposed motion for judicial notice of the Notice to Change of Regulations, issued by the Department and dated April 19, 2019. The regulations at issue were revised to extend eligibility for parole consideration to nonviolent inmates serving a life term, after the trial court's decision here and in response to *In re Edwards* (2018) 26 Cal.App.5th 1181 (*Edwards*), discussed *post*. These revisions are not germane to our

regulations modified the emergency regulations to define "nonviolent offender"[3] as *any* inmate who is *not*: (1) condemned to death; (2) currently incarcerated for a term of life without the possibility of parole; (3) currently serving a term of incarceration for a "violent felony" as defined by Penal Code section 667.5, subdivision (c); (4) currently serving a term of incarceration for a nonviolent felony offense after completing a concurrent determinate term for a "violent felony." (Title 15, § 3490, subds. (a) & (c); 2449.1, subd. (a).) The final regulations provided that nonviolent offenders, as defined by title 15, section 3490, shall be eligible for early parole consideration, except, *inter alia*, inmates "convicted of a sexual offense that currently requires or will require registration as a sex offender under the Sex Offender Registration Act, codified in sections 290 through 290.024 of the Penal Code." (Title 15, §§ 3491, subds. (a) & (b)(3).)

The final statement of reasons supporting the permanent regulations provided the Department's reasons for excluding sex offenders from the early parole process: "Public safety requires that sex offenders be excluded from nonviolent parole consideration." (Cal. Dept. of Corrections, Credit Earning and Parole Consideration Final Statement of Reasons, Apr. 30, 2018, p. 20.) The Department then reiterated its reasoning from the

---

discussion here. We deny the remaining (three) requests for judicial notice of additional documents contained in Alliance's May 15, 2019, filing captioned "Respondents' Request for Judicial Notice," as consideration of these materials is not necessary to our resolution of this appeal.

[3] Recently our colleagues in the Second Appellate District, Division Five decided *In re Mohammad* (2019) 42 Cal.App.5th 719. There, the court determined the Department's final regulations impermissibly condition early parole eligibility on an inmate's status as a "nonviolent offender." (*Id.* at pp. 726-727.) Rather, "Section 32(a)(1) extends early parole consideration to persons 'convicted of a nonviolent felony *offense*,' " even where the inmate was also convicted of a violent offense. (*Id.* at p. 727.) The issue presented in *Mohammad* is not before us here, and therefore we do not address it. But we observe the holding in *Mohammad* may well affect the manner in which the Department must amend its regulations in light of our holding here.

5

initial statement of reasons. (*Ibid*.) It observed that offenses not considered serious or violent felonies but that require registration as a sex offender include "incest, pimping of a minor under sixteen, sexual battery, and lewd and lascivious acts with a fourteen or fifteen year old victim where the perpetrator is at least ten years older." (*Ibid.*) Although the Department did not exclude these offenders as falling outside the definition of "nonviolent offender" in the final regulations, it concluded: "The department has determined that these sex offenses demonstrate a sufficient degree of violence and represent an unreasonable risk to public safety to require that sex offenders be excluded from nonviolent parole consideration." (*Ibid.*) The Secretary of the Department certified that the final regulations "protect and enhance public safety."

## DISCUSSION

### I

### *Validity of the Department's Regulation*

The Department contends it did not exceed its rulemaking authority by excluding inmates required to register as sex offenders under Penal Code section 290 from early parole consideration. It argues the language of Proposition 57 demonstrates the voters' intent to confer on it broad discretion to promulgate regulations that protect and enhance public safety, even if those regulations exclude nonviolent sex offenders otherwise eligible for early parole consideration.[4]

At the outset we observe the Department does *not* argue that all sex offenses requiring registration under Penal Code section 290 are excluded from the term "nonviolent felony offense" for purposes of article I, section 32, subdivision (a)(1). In

---

[4] The Department also argues the materials provided to voters demonstrates the voters' intent to permit the Department to exclude registered sex offenders from the nonviolent parole process. But as we will discuss, we conclude the plain language unambiguously demonstrates the voters' intent, and therefore we do not consider this argument.

6

other words, the issue before us is not whether the Department may define "nonviolent offender"[5] to exclude inmates convicted of a nonviolent sex offense. Rather, the issue presented here is whether the Department is authorized to exclude from early parole consideration all sex offenders regardless of their undisputed status as convicted of "nonviolent offenses" on the basis that they are more likely than other offenders to recidivate and are therefore dangerous to public safety.[6] The Department summarizes its argument as follows: "[T]he Amendment grants *all* nonviolent offenders parole consideration ([Cal. Const., art. I, § 32,] subdivision (a)) *only* if the Secretary can certify that doing so both enhances and protects public safety ([Cal. Const., art. I, § 32,] subdivision (b)). Stated differently, [Cal. Const., art. I, § 32,] subdivision (b) authorizes the Secretary to exclude offenders for public safety reasons *who would otherwise be eligible*." (Third italics added.) We interpret the Department's argument as conceding that nonviolent sex offenders--that is, sex offenders whose crimes are nonviolent pursuant to the Department's definition of "nonviolent offender"--would be eligible for early parole consideration under the Amendment but for the Department's decision to exclude them as a risk to public safety.

The Department raises two arguments in support of its position. First, the Department argues that "enhancing public safety" is the overarching goal of Proposition 57 and that the overriding purpose of the Amendment is to "expand parole eligibility consistent with public safety." It points to the text of the Amendment: "The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this

---

[5] Or, consistent with the holding in *In re Mohammad*, *supra*, 42 Cal.App.5th 719, persons convicted of a nonviolent offense.

[6] We take no position on the Department's contention that inmates convicted of nonviolent sex offenses are more likely to reoffend than other inmates.

article or any other provision of law." (Cal. Const., art. I, § 32, subd. (a).) Relatedly, the Department argues the position of the phrase "public safety" before the language establishing early parole eligibility to nonviolent offenders demonstrates the supremacy of public safety concerns over parole eligibility criteria.

Second, the Department argues article I, section 32, subdivision (b)'s requirement that the Secretary of the Department certify that every regulation adopted in accordance with the provisions must "protect and enhance public safety" authorizes it to exclude sex offenders even where those sex offenders are incarcerated for nonviolent offenses. The Department asserts the Amendment's certification requirement would be rendered meaningless if the Department were required to certify regulations allowing sex offenders to be eligible for early parole consideration despite its legitimate public safety concerns. (See *People v. Woodhead* (1987) 43 Cal.3d 1002, 1010 ["It is a settled axiom of statutory construction that significance should be attributed to every word and phrase of a statute, and a construction making some words surplusage should be avoided"].) We disagree with each of the Department's arguments.

A. *Standard of Review*

" 'In order for a regulation to be valid, it must be (1) consistent with and not in conflict with the enabling statute and (2) reasonably necessary to effectuate the purpose of the statute. [Citation.]' [Citations.]. Therefore, 'the rulemaking authority of the agency is circumscribed by the substantive provisions of the law governing the agency.' [Citation.] ' "The task of the reviewing court in such a case is to decide whether the [agency] reasonably interpreted [its] legislative mandate. . . . Such a limited scope of review constitutes no judicial interference with the administrative discretion in that aspect of the rulemaking function which requires a high degree of technical skill and expertise. . . . [T]here is no agency discretion to promulgate a regulation which is inconsistent with the governing statute. . . . Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the

8

courts. . . . Administrative regulations that alter or amend the statute or enlarge or impair its scope are void . . . ." [Citation.]' (*Id.* at pp. 757-758)." (*Edwards, supra,* 26 Cal.App.5th at p. 1189.)

"When construing constitutional provisions and statutes, including those enacted through voter initiative, '[o]ur primary concern is giving effect to the intended purpose of the provisions at issue. [Citation.] In doing so, we first analyze provisions' text in their relevant context, which is typically the best and most reliable indicator of purpose. [Citations.] We start by ascribing to words their ordinary meaning, while taking account of related provisions and the structure of the relevant statutory and constitutional scheme. [Citations.] If the provisions' intended purpose nonetheless remains opaque, we may consider extrinsic sources, such as an initiative's ballot materials. [Citation.] Moreover, when construing initiatives, we generally presume electors are aware of existing law. [Citation.] Finally, we apply independent judgment when construing constitutional and statutory provisions. [Citation.]' [Citation.]" (*Edwards*, *supra*, 26 Cal.App.5th at p. 1189.)

B. *Analysis*

We begin construing Proposition 57 by examining the language of the proposition. In interpreting this provision, we accord " 'significance, if possible, to every word, phrase and sentence in pursuance of' " the voters' intent. (*People v. Valencia* (2017) 3 Cal.5th 347, 357.) We may not insert words or add provisions to an unambiguous statute. (*People v. Hunt* (1999) 74 Cal.App.4th 939, 946.)

Section 32, subdivision (a) of article I unequivocally states that *any person* convicted of a *nonviolent felony offense* and sentenced to state prison *shall* be eligible for parole consideration after completing the full term for his or her primary offense. That provision, when read in isolation, does not suggest that the Department may exclude any class of inmate convicted of a nonviolent offense from early parole consideration. There is no qualifying provision permitting the Department to draft regulations excluding

9

classes of nonviolent offenders on the basis of their likelihood of recidivism or any other public safety consideration. The plain language of article I, section 32, subdivision (a)(1) is unequivocal.

When read as a whole, the language of the proposition does not change our view that section 32, subdivision (a)(1) of article I unequivocally demonstrates the voters' intent to provide early parole consideration for *all* inmates convicted of a nonviolent offense--as opposed to only those inmates the Department believes are sufficiently unlikely to reoffend. While we agree with the Department that one of the goals of Proposition 57 is to enhance public safety, a generally stated goal of enhancing public safety does not authorize the Department to promulgate regulations outside of the scope of the plain language of Proposition 57. Had the voters agreed with the Department that enhancing public safety required excluding inmates convicted of a nonviolent sex offense from early parole consideration, they could have added that provision to the proposition. They did not. Nor did they add a provision to the proposition authorizing the Department to exclude any category of offenses it considered to be a risk to public safety, regardless of the category's classification as nonviolent. We see nothing in the text of Proposition 57 to suggest that the stated policy goal of enhancing public safety permits the Department to promulgate regulations directly contradicting the text of the proposition.

Additionally, enhancing public safety is not the only goal of Proposition 57, and the Department's promulgated regulation would adversely affect the Amendment's other stated goals. Section 5 of Proposition 57 provides in relevant part: "This act shall be broadly construed to accomplish its purposes." Permitting the Department to restrict the number of eligible inmates due to perceived danger to public safety does not broadly construe the stated goals of the proposition. For example, restricting the number of inmates eligible for early parole consideration would not save money by reducing wasteful spending on prisons. Rather, it would require continued spending to house

10

nonviolent sex offenders otherwise eligible for parole. The Department's regulation would also not help prevent federal courts from indiscriminately releasing prisoners due to state prisons' overcrowding; the Department's decision to render ineligible otherwise eligible inmates impedes the goal of reducing the prison population.

We also disagree with the Department that the certification requirement in article I, section 32, subdivision (b) authorizes the Department to promulgate regulations contradicting the plain language of section 32, subdivision (a). Nothing in the language of section 32, subdivision (a) suggests that it is limited by the provisions of section 32, subdivision (b). Indeed, subdivision (a) is prefaced with the following: "The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, *notwithstanding anything in this article* or any other provision of law." (Italics added.) The language in subdivision (b) confirms that point: "[The Department] shall adopt regulations *in furtherance of* these provisions . . . ." (Italics added.) Subdivision (b), contrary to the Department's contention, does not permit the Department to promulgate regulations *limiting* the express requirements of subdivision (a)(1). Rather, it requires that the Department promulgate regulations to *advance* the express requirements of subdivision (a)(1), which does not limit the categories of inmates eligible for early parole consideration based on their likelihood of recidivism. There is " ' "no agency discretion to promulgate a regulation which is inconsistent with the governing statute." ' [Citation.]" (*In re McGhee* (2019) 34 Cal.App.5th 902, 911 (*McGhee*).)

Requiring the Department to promulgate regulations consistent with the Amendment does not render the certification requirement surplusage of no legal effect, as the Department contends. " '[S]urplusage' in this context means surplusage as to *other statutory language*, not as to some possible judicial interpretation." (*Reno v. Baird* (1998) 18 Cal.4th 640, 658.) Our interpretation of the Amendment still requires the Department to promulgate regulations in furtherance of the provision of the Amendment

11

and still requires the Secretary of the Department to certify that the regulations enhance public safety. The Department is still required to define the term "nonviolent felony offense," but it must do so consistently with the intent of the voters as unambiguously expressed by the plain language of the statute.

Furthermore, we are dubious of the Department's premise that allowing nonviolent sex offenders to be considered for early parole endangers public safety. The Amendment does not require that all inmates convicted of nonviolent felonies are subject to immediate release from custody. Rather, those inmates are permitted only early *consideration* by the Board of Parole Hearings, which is charged with determining whether an inmate is suitable for parole. (See, e.g., *In re Perez* (2016) 7 Cal.App.5th 65, 84 [Board of Parole Hearings' core determination is whether a prisoner remains a current threat to public safety].)

Courts have repeatedly rejected in other contexts the Department's argument that the reference to "public safety" in the Amendment permits it to promulgate regulations excluding categories of inmates otherwise eligible for early parole consideration. In *Edwards*, *supra*, 26 Cal.App.5th 1181, the Second Appellate District, Division Five struck down the Department's regulation that excluded nonviolent, indeterminately sentenced third strike offenders from the early parole process. In support of its regulation, the Department asserted in its final statement of reasons: "[L]ife term inmates remain ineligible for parole consideration because the plain text of Proposition 57 makes clear that parole eligibility only applies to determinately sentenced inmates, and furthermore, *public safety requires their exclusion.*" (*Id.* at p. 1188, citing Cal. Dept. of Corrections, Credit Earning and Parole Consideration Final Statement of Reasons, Apr. 30, 2018, p. 14, italics added.) The appellate court concluded the Department's argument did not reflect the voters' intention in passing Proposition 57, which included "reducing wasteful spending on prisons, emphasizing rehabilitation, protecting public safety, and

12

avoiding compelled, indiscriminate inmate releases by federal court decree." (*Id.* at p. 1191, citing Ballot Pamp., Gen. Elec. (Nov. 8, 2016) text of Prop. 57, p. 141, § 2.)

The court in *Edwards*, *supra*, 26 Cal.App.5th at page 1191, observed there is strong evidence the voters who approved Proposition 57 sought to provide relief to nonviolent offenders, and excluding an inmate who the Department conceded was a nonviolent offender left the court "convinced that excluding him for relief is inconsistent with the voters' intentions." Notably, the court did not conclude the Department was entitled to exclude nonviolent offenders serving a life sentence with the possibility of parole on the basis that the Department was permitted to exclude a certain category of nonviolent offenders due to the proposition's goal of enhancing public safety or the public safety certification requirement in article I, section 32, subdivision (b).

In *In re Gadlin* (2019) 31 Cal.App.5th 784, at pages 789 to 790, review granted May 15, 2019 (S254599) (*Gadlin*)[7] the Second Appellate District, Division Five concluded the Department could not exclude inmates who had previously been convicted of offenses requiring them to register as sex offenders from early parole consideration. In *Gadlin*, as here, the Department argued "that its application of the regulations to exclude inmates who have sustained prior registrable convictions is consistent with its determination that registrable sex offenses involve a sufficient degree of violence and registrable inmates represent an unreasonable risk to public safety." (*Id.* at p. 789.) Disagreeing, the court held: "These policy considerations . . . do not trump the plain text of section 32(a)(1)," which clearly provides that early parole eligibility must be assessed based on the current offense of conviction. (*Ibid.*) We followed *Gadlin* in *In re Schuster* (2019) 42 Cal.App.5th 943.

---

[7] In light of the Supreme Court's pending review of *Gadlin*, we cite it for its persuasive rather than precedential value. (See Cal. Rules of Court, rules 8.1105(e)(1)(B), 8.1115(e)(1).)

Finally, in *McGhee, supra*, 34 Cal.App.5th 902, the First Appellate District, Division Four struck down the Department's process of first screening inmates to determine whether they satisfy eligibility criteria before referring them to the Board of Parole Hearings for parole consideration. The Department stated in its statement of reasons supporting the regulation, "Under these criteria, nonviolent offenders will automatically be screened out if their prison records establish they have recently committed serious misconduct indicating they pose an unreasonable risk of violence." (*Id.* at p. 907, citing Statement of Reasons, p. 17.) The Department contended that the regulations were consistent with the term "parole consideration" in section 32, subdivision (a)(1) of article I. (*McGhee*, at p. 908.) The appellate court rejected the Department's argument and determined that the statutory and regulatory scheme in place before the voters passed Proposition 57 can only be understood such that "parole consideration" requires parole consideration by the Board of Parole Hearings, not the Department. (*Id.* at pp. 909-910.) The court held that the Department's newly created screening process was contrary to the intent of and inconsistent with the language of section 32, subdivision (a)(1). (*McGhee*, at p. 911.)

In *McGhee* the Department argued, as it does here, that the challenged regulations should be upheld as within the Department's discretion. The court observed, "there is ' "no agency discretion to promulgate a regulation which is inconsistent with the governing statute." ' [Citation.] While Proposition 57 delegated rulemaking authority to the Department to 'fill up the details,' as the Attorney General argues, the exclusion of otherwise eligible inmates from board consideration is hardly a detail." (*McGhee*, *supra,* 34 Cal.App.5th at p. 911.) The court also "unequivocally reject[ed] the assertion that compliance with Proposition 57 will undermine public safety." (*Id.* at p. 913.) The court observed that the Board of Parole Hearings will continue to review the records of eligible inmates to determine whether the inmates present a risk to public safety. (*Ibid.*)

14

While *Edwards*, *Gadlin*, and *McGhee* do not squarely address the issue presented here, they nonetheless illustrate the Department's repeated attempts to exclude categories of inmates undisputedly classified as "nonviolent" from early parole consideration despite this classification and under the guise of "public safety." In each case, the appellate court determined that the Department was required to adhere to the voters' intent in passing the Amendment rather than authorizing the Department to exclude groups of nonviolent inmates solely based on its view of public safety. We do the same here. We too reject the Department's claim that the goal of public safety entitles it to contradict the unambiguous language of the Amendment.

Because we find the plain language of the statute unambiguous as to the voters' intent in passing Proposition 57, we need not address the Department's argument that the ballot materials support its position regarding the voters' intent.

## DISPOSITION

The judgment is affirmed. Costs are awarded to Alliance. (Cal. Rules of Court, rule 8.278.)

/s/
Duarte, J.

We concur:

/s/
Blease, Acting P. J.

/s/
Hoch, J.

15