Filed 11/25/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| In re MACANTHONY CANADY, | C089363 |
| On Habeas Corpus. | (Super. Ct. No. 19HC00013) |

ORIGINAL PROCEEDING. Petition for writ of habeas corpus. Reversed.

Xavier Becerra, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Sara R. Romano, Charles Chung, Deputy Attorney General, for Petitioner.

Michael Satris and Allen G. Weinberg, under appointment by the Court of Appeal, for Respondent Macanthony Canady.

Macanthony Canady petitioned the superior court for a writ of habeas corpus seeking early parole consideration under Proposition 57, also known as the Public Safety and Rehabilitation Act of 2016 (Proposition). He asserted the California Department of Corrections and Rehabilitation's (Department) regulation purporting to implement Proposition 57 was inconsistent with the Proposition. Specifically, the Department's

1

regulation did not consider conduct credits inmates earned while incarcerated in the calculation of inmates' nonviolent early parole eligible dates. The trial court agreed with Canady; it invalidated the Department's regulation as contradicting the stated purposes of the Proposition.

The Attorney General appeals from the trial court's order. He contends the order must be reversed because the Department's regulation is consistent with the plain language of the Proposition, authorized by the broad discretion granted to it by the Proposition, and consistent with the voters' intent in passing the Proposition. We agree with the Attorney General and reverse the order.

## BACKGROUND AND PROCEEDINGS

*Conduct Credits*

The Legislature provides inmates incarcerated in state prison with the ability to reduce the length of their prison terms by earning conduct credits, including "worktime credit" and "program credit." (Pen. Code, § 2930 et seq.)[1] Typically, inmates may earn up to one day of worktime credit for each actual day of incarceration, or a 50 percent reduction in the inmate's sentence. (§ 2933, subd. (b).) The Department may award program reductions for participation in academic or vocational programs, vocational training, anger management and social life skills programs, substance abuse programs, and others. (§ 2933.05, subds. (a), (c).) The Legislature limits such conduct credits earned by inmates who have been previously convicted of a serious or violent felony to no more than one-fifth of the total term of imprisonment. (§ 1170.12, subd. (a)(5).) The credits are a privilege, not a right, and they may be "denied or lost" by committing various acts of misconduct while incarcerated. (§§ 2932, 2933, subds. (a), (c), 2933.05, subd. (b).)

---

[1] Further undesignated statutory references are to the Penal Code.

The Legislature also requires that individuals convicted of felonies or misdemeanors are awarded credit for time spent in custody before sentencing. (§ 2900.5.) Inmates may earn credits against their sentences both for actual days spent in custody and additional credits based on their work and good conduct during presentence custody. (§§ 2900.5, subd. (a), 4019.) It is the trial court's duty to determine the dates of custody and the total number of days to be credited pursuant to section 2900.5. (§ 2900.5, subd. (d).)

When an inmate sentenced to a determinate term has served that term, or at the expiration of the "term reduced pursuant to Section . . . 2933 [worktime credit], if applicable, the inmate shall be released on parole." (§ 3000, subd. (b)(2)(B).)

*Proposition 57*

In November 2016 California voters passed Proposition 57. The initiative added section 32 to article I of the California Constitution which, among other things, provides for early parole consideration for inmates serving prison sentences for nonviolent offenses.[2] The added section (Amendment) provides: "(a) The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law: [¶] (1) Parole Consideration: Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense. [¶] (A) For purposes of this section only, the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence. [¶] (2) Credit Earning: The Department of Corrections and Rehabilitation shall have authority to award credits

---

[2] Further unspecified references to "article" are to the California Constitution.

3

earned for good behavior and approved rehabilitative or educational achievements.  [¶]
(b)  The Department of Corrections and Rehabilitation shall adopt regulations in
furtherance of these provisions, and the Secretary of the Department of Corrections and
Rehabilitation shall certify that these regulations protect and enhance public safety."

Section 2 of Proposition 57 states its (uncodified) purposes, as relevant here:  "1.
Protect and enhance public safety.  [¶]  2.  Save money by reducing wasteful spending on
prisons.  [¶]  3.  Prevent federal courts from indiscriminately releasing prisoners.  [¶]  4.
Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles."
(Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141.)

*Department Regulations*

Following the implementation of emergency regulations, the Department issued
final regulations purporting to implement the Amendment.  (See Cal. Code Regs., tit. 15,
former §§ 3490, 3491, Register 2018, No. 18 (May 1, 2018).)[3]  The Department defined
the "full term" as used in article I, section 32, subdivisions (a)(1) and (a)(1)(A) as "the
actual number of days, months, and years imposed by the sentencing court for the
inmate's primary offense, not including any sentencing credits."  (Tit. 15, § 3490, subd.
(e).)  The Department defined inmates' "nonviolent parole eligible" date as:  "the date on
which a nonviolent offender who is eligible for parole consideration under [Title 15,]
section 3491 has served the full term of his or her primary offense, less any actual days
served prior to sentencing as ordered by the court under section 2900.5 of the Penal Code
and any actual days served in custody between sentencing and the date the inmate is
received by the department."  (*Id.*, § 3490, subd. (f).)

The Department recognized that the sentencing court awards presentence credits,
which are applied to reduce an inmate's aggregate sentence.  (Tit. 15, §§ 3043.1, 3371.1,

---

[3]  Further undesignated regulation references are to title 15 of the California Code of
Regulations (Title 15).

4

subd. (c)(1)(A).)  The Department awards postsentence credit for actual days and good conduct days spent in custody after sentencing but before an inmate is formally received by the Department.  (*Id.*, § 3371.1, subds. (c)(1)(B)-(C).)  The Department also awards credits to inmates consistent with statutory requirements.  (*Id.,* § 3043 et seq.)  In the case of a determinately sentenced inmate, the Department's regulations require applying conduct credits to advance an inmate's release date but not to calculating the inmate's early parole eligible date.  (*Id.*, §§ 3043, subd. (a), 3043.2, subd. (b), 3490, subd. (f).)

*Petitioner's Incarceration Background*

Petitioner was convicted of driving under the influence with priors.  (Veh. Code, § 23152, subd. (b).)  On August 10, 2017, he was sentenced to four years in prison, which was double the statutory midterm of two years due to his previous conviction for a serious or violent felony.  The sentencing court awarded petitioner presentence credit for 136 days, including 68 actual days spent in custody and 68 days of local conduct credit. (§§ 2900.5, subd. (d), 4019).

On September 6, petitioner was received by the Department and formally began his four-year term.  The Department recognized that the court had awarded petitioner 136 days of presentence credit, and it awarded him an additional 26 days actual and 13 days conduct credit for his time served following sentencing but before being received by the Department.  While incarcerated, the Department continued to award petitioner conduct credits to reduce the length of his total sentence.  However, pursuant to its regulations, the Department did not apply petitioner's conduct credits toward the calculation of his nonviolent early parole eligible date.  The Department calculated petitioner's early parole eligible date as June 4, 2019, which was two years from the date petitioner was received by the Department less the 94 actual days--68 presentence days and 26 postsentence days--petitioner spent in custody before being received by the Department.

5

*Habeas Corpus Proceedings*

Petitioner filed a petition for writ of habeas corpus in the San Luis Obispo County Superior Court challenging the Department's calculation of his nonviolent parole eligible date on the grounds that the Department's calculation denied him the benefit of his conduct credits. The petition was transferred to the Sacramento Superior Court, which issued an order to show cause; the Department filed a return, and petitioner filed a traverse.

The trial court granted the habeas petition, concluding Proposition 57 requires the Department to apply conduct credits when calculating an inmate's early parole eligible date. The court ruled Title 15, section 3490, subdivision (f) is invalid as contrary to the voters' intent in passing Proposition 57 to the extent it does not require the application of conduct credits towards the inmate's nonviolent parole eligible date. It directed the Department and the Board of Parole Hearings to stop enforcing Title 15, section 3490, subdivision (f), to promulgate emergency regulations consistent with its ruling, and to recalculate petitioner's parole eligible date.

The Department recalculated petitioner's early parole eligible date to June 20, 2018.[4] The trial court denied the Department's request to stay enforcement of the remaining portion of its order pending appeal. The Department timely appealed the court's order.

The Department filed a petition for writ of supersedeas in this court to stay enforcement of the trial court's order pending appeal. We construed the supersedeas petition as a stay request and granted it in part. The Department moved for clarification

---

[4] Petitioner's regularly scheduled parole date was July 23, 2019. Pursuant to the Department's regulations, petitioner was not entitled to early parole consideration given the proximity of his early parole consideration date to his regularly-scheduled parole date. (Tit. 15, former § 3492, subds. (b), (c)(9), Register 2018, No. 18 (May 1, 2018).)

of our order, and we determined, "[the Department] must re-calculate the nonviolent parole eligibility dates of eligible inmates in accordance with the trial court's order." The Department moved for reconsideration. We modified our order to stay the portions of the superior court's order requiring the Department to adopt emergency regulations and to recalculate the parole eligible dates for all eligible inmates other than petitioner.

## DISCUSSION

The Department contends Title 15, section 3490, subdivisions (e) and (f) are valid exercises of the rulemaking authority conferred on it by Proposition 57. In support, the Department argues: (1) Title 15, section 3490, subdivisions (e) and (f) are valid because they are consistent with Proposition 57's plain text, which requires an inmate to complete the "full term" of his or her "primary offense" before becoming eligible for early parole consideration; and (2) the voters did not intend for Proposition 57 to require the application of conduct credits towards an inmate's early parole eligible date. We agree with the Department that Title 15, section 3490, subdivisions (e) and (f) are valid under the plain language of the Amendment.

### I

### *Standard of Review*

" 'In order for a regulation to be valid, it must be (1) consistent with and not in conflict with the enabling statute and (2) reasonably necessary to effectuate the purpose of the statute. [Citation.]' [Citations.] Therefore, 'the rulemaking authority of the agency is circumscribed by the substantive provisions of the law governing the agency.' [Citation.] ' "The task of the reviewing court in such a case is to decide whether the [agency] reasonably interpreted [its] legislative mandate. . . . Such a limited scope of review constitutes no judicial interference with the administrative discretion in that aspect of the rulemaking function which requires a high degree of technical skill and expertise . . . . [T]here is no agency discretion to promulgate a regulation which is inconsistent with the governing statute . . . . Whatever the force of administrative

7

construction . . . final responsibility for the interpretation of the law rests with the courts . . . . Administrative regulations that alter or amend the statute or enlarge or impair its scope are void . . . .” [Citation.]’ [Citation.]” (*In re Edwards* (2018) 26 Cal.App.5th 1181, 1189 (*Edwards*).)

“When construing constitutional provisions and statutes, including those enacted through voter initiative, ‘[o]ur primary concern is giving effect to the intended purpose of the provisions at issue. [Citation.] In doing so, we first analyze provisions’ text in their relevant context, which is typically the best and most reliable indicator of purpose. [Citations.] We start by ascribing to words their ordinary meaning, while taking account of related provisions and the structure of the relevant statutory and constitutional scheme. [Citations.] If the provisions’ intended purpose nonetheless remains opaque, we may consider extrinsic sources, such as an initiative’s ballot materials. [Citation.] Moreover, when construing initiatives, we generally presume electors are aware of existing law. [Citation.] Finally, we apply independent judgment when construing constitutional and statutory provisions.’ ” (*Edwards*, *supra*, 26 Cal.App.5th at p. 1189.)

II

*Constitutional and Regulatory Text, Analysis of “Full Term” Language*

Article I, section 32, subdivision (a)(1), enacted pursuant to Proposition 57, provides: “Any person convicted of a nonviolent felony offense and sentenced to state prison *shall be eligible for parole consideration after completing the full term for his or her primary offense*.” (Italics added.) Subdivision (a)(1)(A) of that section defines “full term” for purposes of the Amendment: “For purposes of this section only, the full term for the primary offense means *the longest term of imprisonment imposed by the court for any offense*, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence.”

Pursuant to Proposition 57, the Department promulgated Title 15, section 3490, subdivision (e), which defined “full term” as “the actual number of days, months, and

8

years imposed by the sentencing court for the inmate's primary offense, not including any sentencing credits."  Subdivision (f) of the same section calculates an inmate's parole eligible date as the date the inmate "has served the full term of his or her primary offense, less any actual dates served prior to sentencing . . . and any actual days served in custody between sentencing and the date the inmate is received by the department."

Our task is to analyze the language of article I, section 32, subdivisions (a)(1) and (a)(1)(A) in their relevant context to determine whether the Department's regulations defining the "full term" of an inmate's "primary offense" is consistent with and reasonably necessary to effectuate the purposes of the Amendment.  We conclude the "full term" was intended by the voters to refer to the sentence imposed by the court without including conduct credits.

In reaching that conclusion, we first compare the definition of the "full term" of an inmate's "primary offense" to the "full term" of a defendant's "principal offense" as used in the determinate sentencing act (DSA).  Under the DSA, most felonies specify three possible terms of imprisonment:  the lower, middle, and upper terms.  (§ 1170, subd. (b); *People v. Felix* (2000) 22 Cal.4th 651, 654.)  The sentencing court selects one of these terms, which are referred to as "determinate sentences."  (§ 1170, subd. (a)(1); *Felix*, at p. 654.)  "Some crimes, however, remain punishable by imprisonment for either some number of years to life, or simply 'life.' [Citation.]"  (*Felix*, at p. 654.)  These offenses are known as "indeterminate" sentences.  (*Id.* at p. 655.)

"Under the DSA, if a defendant is convicted of more than one offense carrying a determinate term, and the trial court imposes consecutive sentences, the term with the longest sentence is the 'principal term'; any term consecutive to the principal term is a 'subordinate term.' (§ 1170.1, subd. (a).)"  (*People v. Felix, supra*, 22 Cal.4th at p. 655.)  The DSA defines the "principal term" as "the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements."  (§ 1170.1, subd. (a).)  "The court imposes the full term, either lower,

middle, or upper, for the principal term.  However, in general (there are exceptions), the court imposes only 'one-third of the middle term' for subordinate terms."  (*Felix*, at p. 655.)  The sum of the full term of the principal term, any consecutively sentenced subordinate terms, and any enhancements or alternative sentences constitute the "aggregate term" of imprisonment.  (§ 1170.1, subd. (a).)  Where a defendant has a prior strike conviction, the three strikes law (§§ 667, subd. (b)-(i), 1170.12) requires that the principal and subordinate terms are doubled.  (*People v. Miller* (2006) 145 Cal.App.4th 206, 214).

The definition of the "full term" of an inmate's "primary offense" as provided by article I, section 32, subdivision (a)(1)(A) is defined similarly to the "principal term" in the DSA.  Both article I, section 32 and the DSA define the "primary offense" or "principal term" as the "longest" or "greatest" the court may impose for any offense.  The definitions differ in that the "principal term" must include a term for attached enhancements, whereas the "full term" of the "primary offense" in article I specifically excludes enhancements.  Nevertheless, the similarity of the "full term" as used in the DSA to the use of "full term" in article I, section 32, subdivisions (a)(1) and (a)(1)(A) clearly suggests that the usage of "full term" in article I was an intentional attempt to describe a term *that has not been reduced*, whether by deduction of credits or any other means.

We next note that other examples from case law indicate that courts use "full term" to *distinguish* a term from that which has been reduced by conduct credits.  (See, e.g., *People v. Austin* (1981) 30 Cal.3d 155, 162 [issue before the court is whether a youthful offender may be awarded conduct credit to "obtain release prior to expiration of the full term imposed"]; *People v. Sage* (1980) 26 Cal.3d 498, 509, fn. 7 [purpose of amendment to § 2900.5 extending right to conduct credit to felons serving presentence time in jail detention was to eliminate disparity in total time served by prisoners who could not earn credit "to reduce their full term"]; *People v. Goodloe* (1995) 37

10

Cal.App.4th 485, 490 [Legislature explained its purpose in enacting § 2933.5 in an uncodified section: "The Legislature hereby finds and declares that the criminal offender who has been separately tried and convicted of repeated serious violent felonies . . . has demonstrated that he or she poses a serious danger to the public if released from prison early and should, . . . serve the full terms of his or her sentences without benefit of goodtime or worktime credits"].) These cases further support the argument that the voters intentionally invoked the "full term" designation to distinguish an original or "full" term sentence from a term where the service requirement has been reduced, by subtraction of conduct credits or some other means.

We have already set forth the language of section 3000, subdivision (b)(2)(B), stating that an inmate sentenced to a determinate term should be released on parole, if applicable, at the expiration of the "term reduced pursuant to Section . . . 2933 [worktime credit]." This language is yet another example illustrating that the application of conduct credit operates as a reduction of an inmate's *time in custody*, not as a reduction of the *term itself*. Service of the full term is precisely that--service of the term itself, without any reduction by application of credits awarded during that service. Application of credits shortens custody time and accelerates release, but the credits do not operate to shorten the term itself; rather, credits merely to reduce the time in custody necessary to satisfy service of that term. Where a full term is required, service of the term is required without any reduction.

Petitioner disagrees with this plain language reading of article I, subdivisions (a)(1) and (a)(1)(A). He contends the voters are presumed to have been aware that an inmate "completes his term precisely when he has served that term, and service of a term *always* includes credits awarded during that service." Accordingly, he asserts the voters could not have contemplated that the Department would not apply the conduct credits "the prisoner earned to satisfy service of the full term imposed by the court that qualified a nonviolent offender for early parole consideration . . . ."

11

Focusing on petitioner's argument that an inmate "completes his *term* when he has served that *term*" (italics added), we do not disagree that the voters are presumed to have been aware that inmates complete *service of their sentence* when they complete the aggregate term, or custodial sentence, as reduced by conduct credits awarded during incarceration. We recognize that pre-Proposition 57 law included a detailed scheme requiring the application of conduct credits to reduce the length of most state inmates' prison sentences. (§§ 2900.5, subd. (e), 2930, et seq. 3000, 4019.) Indeed, following the passage of Proposition 57, the Department continues to award conduct credits to reduce the aggregate term of inmates' sentences consistent with pre-Proposition 57 law. (See tit. 15, §§ 3043.2, subd. (b), 3371.1, subd. (c)(3)(A).)

However, we disagree that the statutory scheme of awarding conduct credits to ultimately reduce the length of inmates' sentences has any bearing on the definition of *full term* as used in the Amendment. Petitioner points to no authority defining a "full term" as a term reduced by conduct credits. As we have explained, generally a "full term" is a term *not* reduced by conduct credits. A "full term" as defined by the Amendment specifically excludes enhancements, consecutive sentences, and alternative sentences; the Amendment does not mention conduct credits in that definition. Had the Proposition's drafters intended to depart from the common legal usage of "full term" and the commonsense, everyday definition of "full term" as a term that is full, as opposed to reduced (see *People v. Valencia* (2017) 3 Cal.5th 347, 373 [refusing to attribute to the average voter an understanding of legal terminology that he or she more likely understood otherwise]), they could have easily done so.

Importantly, the drafters could easily have specified that a "full term," in addition to "excluding the imposition of an enhancement, consecutive sentence, or alternative sentence," also *includes* consideration of earned conduct credits. They did not do so. Thus, in passing the Proposition, we presume the voters intended to apply the common usage of "full term" as used to distinguish full service of the principal term imposed by

12

the court from partial service of a term that has been *reduced* by conduct credits, and is thereby no longer "full."

Other provisions in the Amendment support the conclusion that the drafters of Proposition 57 intended for the Department to have broad authority over the application of conduct credits to reduce inmates' sentences. Article I, section 32, subdivision (a)(2) provides: "The Department of Corrections and Rehabilitation shall have authority to award credits earned for good behavior and approved rehabilitative or educational achievements." By its plain terms, subdivision (a)(2) authorizes the Department to award--or to not award--conduct credits as it sees fit. (See, e.g., *Brown v. Superior Court* (2016) 63 Cal.4th 335, 359, 361 (dis. opn. of Chin, J.) [art. I, § 32, subd. (a)(2) is permissive; "Presumably, authority to award credits includes authority *not* to award credits or to award fewer credits than the statutes currently require" (*Brown*, at p. 359)].) The broad and permissive language of subdivision (a)(2) suggests that the voters intended for the Department to have substantial discretion in determining how credits are applied to early parole consideration and further refutes the argument that the Amendment was intended to *require* the Department to apply conduct credits to early parole eligible date calculations. To the contrary, as we have explained, the plain language of article I, section 32, subdivisions (a)(1) and (a)(1)(A) prohibits the application of conduct credits to such calculations through its use of the description "full term."

Petitioner disagrees with the interpretation of article I, section 32, subdivision (a)(2) set forth above and contends the voters only intended for the Department to have authority to award credits in addition to those already provided by statute. But that is not what the Amendment *says*. Construing the Amendment as petitioner requests would require us to add language to the statute, which we may not do. (See *People v. Roach* (2016) 247 Cal.App.4th 178, 184 [court cannot add language to a statute even if addition would better further the intent of the voters].)

13

Article I, section 32, subdivision (b) also supports a broad grant of authority to the Department.  Subdivision (b) provides:  "The Department of Corrections and Rehabilitation shall adopt regulations in furtherance of these provisions, and the Secretary of the Department of Corrections and Rehabilitation shall certify that these regulations protect and enhance public safety."  We have previously held that subdivision (b) does not authorize the Department to promulgate regulations that contradict the plain language of the Amendment.  (See *Alliance for Constitutional Sex Offense Laws v. Department of Corrections and Rehabilitation* (2020) 45 Cal.App.5th 225, 235, review granted May 27, 2020, S261362.)  But here, as we have discussed, the Department's regulations do not contradict the plain language of the Amendment.  And, as we will discuss *post*, we conclude the Department's regulations do further the Amendment's provisions.

We also disagree with petitioner's argument that the Attorney General's definition of "full term" in his briefing is not consistent with Title 15, section 3490, subdivisions (e) and (f) because the regulations consider actual presentence days spent in custody in the calculation of the "full term" of the "primary offense."  According to petitioner, the sentence or term imposed by the court begins when the inmate is received by the Department, and therefore the "full term" as interpreted by the Department should not include presentence credit for actual days spent in custody.  But we conclude the "full term" is the term without reduction for *conduct* credits, not that it is the term without reduction for *actual time* already spent in custody, which constitutes partial service of that full term.

### III

### *Effectuating the Stated Purposes of the Amendment*

Petitioner further asserts that the Department's definition of "full term" is invalid because it is inconsistent with the stated purposes of Proposition 57.  Article I, section 32, subdivision (a) provides:  "The following provisions are hereby enacted to enhance

14

public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law." Section 2 of Proposition 57 states its (uncodified) purpose and intent: "1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles." (Voter Information Guide, *supra*, text of Prop. 57, § 2, p. 141.) The purposes of the Amendment are to "be broadly construed to accomplish its purposes." (*Id.*, § 5, p. 145.)

We disagree with petitioner that these broadly stated goals require construing the Amendment differently than the plain language provides. As we have discussed, the plain language of article I, section 32, subdivisions (a)(1) and (a)(1)(A) unambiguously provides that inmates shall be eligible for early parole consideration upon serving the full term of their primary offense, or the longest term imposed by the court not reduced by conduct credits or any other means. We do not see that the Department's regulations implementing this requirement fail to effectuate the stated goals of the Amendment. While the Department is not required to promulgate regulations contradicting the Amendment's intent, we do not construe the Amendment to require the Department to promulgate regulations maximizing every conceivable means of saving money where not otherwise required by the Amendment. (See, e.g., *People v. Morales* (2016) 63 Cal.4th 399, 408 [ballot measure's stated purpose of "saving money" "does not mean we should interpret the statute in every way that might maximize any monetary savings"].) As construed by the Department, the early parole provision of the Amendment will result in earlier parole eligible dates for some inmates, which will reduce the prison population, save money spent housing prisoners, and help to reduce the prison population to avoid the release of prisoners by federal court order.

Two recent cases involving Proposition 57 exemplify the effect of the early parole provision of the Amendment. In *In re Mohammad* (2019) 42 Cal.App.5th 719, at pages

15

722 through 723, and page 726, review granted February 19, 2020, S259999 (*Mohammad*), the appellate court discussed the application of the Department's regulations while addressing a different challenge to the regulations. In *Mohammad*, the inmate had been convicted of 15 counts and sentenced to 29 years in prison. The trial court designated one of Mohammad's receiving stolen property counts of conviction as the principal sentencing term, and it ordered the remaining terms to run consecutively to the principal term. (*Id.* at p. 723.) The Department denied Mohammad early parole consideration because it determined one of Mohammad's offenses was a violent offense, rendering him a "violent offender." (*Id.* at p. 724.)

The court concluded Mohammad had committed a "nonviolent offense" and was therefore eligible for early parole consideration under Proposition 57. (*In re Mohammad*, *supra*, 42 Cal.App.5th at pp. 724-725) The court observed: "There is no dispute that his primary offense as the Constitution defines it ('the longest term of imprisonment imposed by the court for any offense') is the principal term prison sentence he received for the . . . receiving stolen property conviction. Nor is there any dispute that the 'full term' in prison for that conviction, 'excluding the imposition of an enhancement, consecutive sentence, or alternative sentence' was three years. Therefore, under the plain meaning of [art. I, § 32, subd. (a)(1)], Mohammad is eligible for early parole consideration now that he has served three years in prison." (*Id.* at p. 726.) There, it is indisputable that Mohammad received an earlier parole eligible date pursuant to Proposition 57 than he would have before Proposition 57 was passed, regardless of the application of conduct credits.

Similarly, in *Edwards*, *supra*, 26 Cal.App.5th 1181, at pages 1192 to 1193, the appellate court concluded that an inmate who had been sentenced pursuant to the three strikes law to an indeterminate sentence of 25 years to life was nevertheless eligible for early parole consideration under Proposition 57. The court concluded that, as a person convicted of a nonviolent offense, the imposition of a sentence pursuant to the three

16

strikes law was an "alternative sentence" expressly excluded from the calculation of an inmate's early parole eligible date under article I, section 32, subdivision (a)(1)(A). (*Edwards*, at pp. 1189-1190.) In imposing an indeterminate sentence, the appellate court recognized the sentencing court had not imposed a "full term" for a "primary offense." (*Id.* at p. 1192.) Accordingly, the court concluded the "full term" of the inmate's "primary offense" was the upper term of three years for defendant's underlying conviction. (*Ibid.*)

As *Mohammad* and *Edwards* make clear, many inmates will be eligible for parole consideration sooner under Proposition 57 than they would have been prior to its passage. Although Title 15, section 3490, subdivisions (e) and (f) do not maximize the possible benefit to all inmates, we cannot say those regulations implementing the Amendment are contrary to the stated purposes of the Amendment such that they are invalid.[5]

---

[5] Because we conclude the plain language of the Amendment unambiguously expresses the voters' intent, we do not address external sources.

## DISPOSITION

The trial court's order is reversed in its entirety.  Upon finality of this decision, the stay previously issued is vacated.

                                                                       /s/
                                                               Duarte, J.

We concur:

/s/
Hull, Acting P. J.

/s/
Murray, J.